# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH SCHIFANO, | 3:18-cv-01806 (KAD) |
| *Plaintiff*, | |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | March 5, 2020 |
| *Defendant*. | |

## MEMORANDUM OF DECISION RE:
## PLAINTIFF'S MOTION TO REVERSE AND/OR REMAND THE DECISION OF THE COMMISSIONER (ECF NO. 22) AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (ECF NO. 24)

Kari A. Dooley, United States District Judge:

Joseph Schifano (the "Plaintiff"), proceeding *pro se*, brings this administrative appeal pursuant to 42 U.S.C. § 405(g). On May 22, 2019, the Plaintiff filed a motion for reconsideration (ECF No. 22), which the Court construed as a motion to reverse and/or remand the decision of Defendant Andrew M. Saul, Commissioner of the Social Security Administration (the "Commissioner"), denying Plaintiff's application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act"). (ECF No. 23.) The Commissioner moves for an order affirming its decision. (ECF No. 24.) For the reasons set forth below, the Plaintiff's motion to reverse and/or remand is DENIED, and the Commissioner's motion to affirm is GRANTED.

---

[1] Plaintiff commenced this action against Nancy A. Berryhill as the Acting Commissioner of Social Security on November 2, 2018. (ECF No. 1.) Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Fed. R. Civ. P. 25(d), Commissioner Saul is automatically substituted for Nancy A. Berryhill as the named defendant. The Clerk of the Court is requested to amend the caption in this case accordingly.

**Standard of Review**

A person is "disabled" under the Act if that person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment" or combination thereof that "must have lasted or must be expected to last for a continuous period of at least 12 months"; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant is unable to perform his past work, the Commissioner

must next determine whether there is other work in the national economy which the claimant can perform in light of his RFC and his education, age, and work experience. *Id.* §§ 404.1520 (a)(4)(i)-(v); 404.1509. The claimant bears the burden of proof with respect to Step One through Step Four, while the Commissioner bears the burden of proof as to Step Five. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

It is well-settled that a district court will reverse the decision of the Commissioner "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotations marks and citation omitted). "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quotation marks and citation omitted). "Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The Court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and can only reject the Commissioner's findings of fact "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (*per curiam*) (quotation marks and citation omitted). Stated simply, "[i]f there is

substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian,* 708 F.3d at 417.

**Background and Procedural History**

On November 4, 2015, Plaintiff filed an application for DIB pursuant to Title II of the Act. Plaintiff's claim for DIB was initially denied on January 20, 2016 and upon reconsideration on June 9, 2016. Thereafter, a hearing was held before an Administrative Law Judge ("ALJ") on October 26, 2017. On November 22, 2017, the ALJ issued a written decision denying Plaintiff's application.

In his decision, the ALJ followed the sequential evaluation process for assessing disability claims. At Step One, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since the alleged onset date of October 31, 2012. (Tr. 17.) At Step Two, the ALJ determined that Plaintiff had medically determinable severe impairments consisting of "depression, bipolar, and related disorders, anxiety and obsessive-compulsive disorders, substance addiction (alcohol), and chronic kidney disease." (Tr. 18.) The ALJ also found that Plaintiff had a non-severe impairment in the form of hypertension. (*Id.*) At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination thereof that meets or medically equals the severity of a listed impairment in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (Tr. 18–19.) At Step Four, the ALJ concluded that, through December 31, 2015—the Plaintiff's date last insured— the Plaintiff had the RFC to perform medium work except that "he can only frequently climb ramps, stairs, ladders, ropes, or scaffolds," "can frequently stoop, kneel, crouch, and crawl," "can have only occasional exposure to odors, dusts, fumes, and other pulmonary irritants," and "can perform simple, routine tasks and his judgment is limited to simple, work-related decisions." (Tr. 20.) The ALJ further found that, through the date last insured, Plaintiff was unable to perform his

4

past relevant work as a financial planner given that he was "limited to simple, routine tasks." (Tr. 27.) Finally, at Step Five, the ALJ concluded that there are a significant number of jobs in the national economy that Plaintiff could perform given the limitations identified in the RFC. (Tr. 27–28.) Accordingly, the ALJ found that Plaintiff was not disabled at any time between the alleged onset date and December 31, 2015 within the meaning of the Act.

On September 24, 2018, the Appeals Council denied Plaintiff's request for review, thereby rendering final the ALJ's decision. This appeal followed.

**Discussion**

In his single-page motion the Plaintiff "respectfully requests reconsideration of a revised initial determination concerning the issue of My Chronic Kidney Disease, based on medical factors, and proof I am very much disabled." He claims that he was diagnosed with chronic kidney disease ("CKD") and renal failure in 2012 and that although he did not apply for DIB until 2015, "my condition became much worse." The Plaintiff asserts that his kidneys "are functioning at 32%," that he is unable "to walk more than a block and can't sit upright for more than a [half] hour," and that he cannot "lift more than [ten pounds] for a short period of time, let alone carry it more than five feet."

The Plaintiff's disability application did not list renal failure or CKD as a basis for his claim. (*See* Tr. 206.) Indeed, a review of the record reveals that the Plaintiff was not diagnosed with CKD until March 2016, months after the date last insured. (*See* Tr. 227, 235–36.) Accordingly, there is scant evidence of any kidney disease, diagnosis, or treatment for the relevant time period. While the records from the earlier period reflect that the Plaintiff was being seen for issues surrounding frequent urination (*e.g.*, Tr. 261, 309), they are otherwise silent on the very issue regarding which Plaintiff seeks reversal of the Commissioner's decision. Notwithstanding,

5

as discussed below, the ALJ reviewed and discussed the later records in fashioning the RFC while appropriately confining his disability determination to the relevant period up through December 31, 2015. The Court will therefore construe Plaintiff's statements as challenges to the ALJ's formulation of the Plaintiff's RFC and will address whether the ALJ's conclusions at Step Four are supported by substantial evidence in the record—particularly as they bear on any temporally relevant functional limitations arising from the Plaintiff's chronic kidney disease.[2]

**Legal Standard**

"Residual functional capacity ['RFC'] is the most a claimant can do in a work setting despite her limitations." *Morales v. Colvin*, No. 3:16-CV-0003 (WIG), 2017 WL 462626, at *1 n.1 (D. Conn. Feb. 3, 2017). "When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*) (internal citations omitted). "An ALJ's RFC assessment should be proper, not internally inconsistent, and supported by substantial evidence." *Payamps v. Berryhill*, No. 3:17-CV-2008 (WIG), 2019 WL 259114, at *3 (D. Conn. Jan. 18, 2019) (quotation marks and citation omitted).

**Relevant Findings**

With respect to the Plaintiff's cumulative limitations arising from his impairments generally, the ALJ found that "[t]he totality of evidence of record reflects greater retained physical,

---

[2] While Plaintiff's submission could also potentially be construed as a challenge to the ALJ's finding that his CKD did not meet or equal a listing at Step Three, at his hearing the Plaintiff conceded, through his counsel, that he could not meet the relevant listing given that he had only recently begun to undergo dialysis. (Tr. 55.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 6.00C1(a). ("Under 6.03, your ongoing dialysis must have lasted or be expected to last for a continuous period of at least 12 months."). As discussed *infra*, the onset of Plaintiff's dialysis postdates the date he was last insured under the Act and therefore cannot serve as the basis for a disability determination.

6

mental, and adaptive abilities than the claimant alleged" and "stabilization of symptoms with treatment . . . ." (Tr. 20–21.) The ALJ further found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," yet he concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 21.) In rendering these conclusions, the ALJ cited, *inter alia*, the Plaintiff's hearing testimony, where he indicated that he is able to drive, cook, and socialize with friends, among other activities. (Tr. 24.)

When evaluating the specific effects of Plaintiff's CKD on his RFC, the ALJ focused on treatment notes from Dr. Matthew Carley, the Plaintiff's nephrologist. The ALJ noted that Dr. Carley indicated on April 27, 2016 that the Plaintiff had been diagnosed was CKD "and was still complaining of urinary frequency, but reported he felt well and that his appetite was good." (Tr. 22.) The ALJ further noted that on that same date, according to Dr. Carley, the Plaintiff's "cardiovascular system, respiratory system, and abdomen were all normal," his "creatinine had returned to normal" and his "blood pressure was under excellent control with his current medication." (*Id.*) On November 11, 2016, Dr. Carley again reported Plaintiff's complaints of frequent urination while noting that "his appetite was good and he had no ankle swelling" and that his "renal function had recovered and his last creatinine levels were normal." (*Id.*) Similarly, on May 17, 2017, Dr. Carley documented Plaintiff's complaints of frequent urination while again indicating that his "acute renal failure had resolved and his creatinine was in the normal range." (*Id.*) The ALJ also relied upon an RFC questionnaire completed by Dr. Carley, in which he gave Plaintiff "an excellent prognosis," indicating that he did not expect Plaintiff's impairments to last 12 months. (Tr. 25.) According to Dr. Carley, Plaintiff "could tolerate high stress work," and

7

could also "sit and/or walk for at least six hours in an eight-hour workday and could occasionally lift and/or carry 50 pounds." (*Id.*) The ALJ conferred great weight on Dr. Carley's opinion in light of his role as a specialist, his treatment history with the Plaintiff, and the consistency of his opinion in light of the record evidence as a whole. (*Id.*)

The ALJ also cited treatment records from Dr. Joseph Singh, whose notes from September 26, 2017 revealed that Plaintiff "had been placed on dialysis for his kidney condition," that he "was examined while on dialysis and he showed no acute issues," and that his "estimated dry weight was appropriate." (Tr. 22.) The ALJ cited other similar records which indicated that "[d]ialysis began a year and almost 10 months after the date last insured and is not expected to be long term." (*Id.*)

In addition to the records specifically cited by the ALJ, a review of the medical record reveals that Plaintiff was admitted to Hartford Hospital on March 7, 2016 for symptoms that included acute renal failure. (*See, e.g.*, Tr. 753.) The discharge summary for that admission indicates that the initial "[p]lan was to perform a renal biopsy if the patient's renal function does not improve" but that "on day 5 of admission, the patient's urinary output started to pick up." (*Id.*) After Plaintiff's creatinine levels stabilized, the decision was made not to proceed with the biopsy, "as the final diagnosis for his acute renal failure was most likely secondary to acute tubular necrosis." (*Id.*) On August 29, 2017, the Plaintiff was again admitted to Hartford Hospital "for alcohol-induced pancreatitis with acute renal failure" with symptoms that included "significantly elevated creatinine." (Tr. 660, 666.) The nephrology notes accompanying this hospital admission confirm that Plaintiff was previously admitted for acute renal failure in March of 2016 and that "[d]uring that admission kidney biopsy was considered but was deferred as kidney function improved with IVF." (Tr. 666–67.) After undergoing dialysis, the Plaintiff was discharged on

September 5, 2017; the relevant discharge notes from the attending physician indicate that Plaintiff would "follow up with nephrology as an outpatient as his dialysis needs may not be permanent depending upon his recovery." (Tr. 690; *see also* Tr. 695.)

**The ALJ Did Not Commit Legal Error in Formulating the Plaintiff's RFC and His Determinations Are Otherwise Supported by Substantial Evidence**

As an initial and dispositive matter, the Court observes that "regardless of the seriousness of [a plaintiff's] present disability, unless [he] became disabled before [the date he was last insured], he cannot be entitled to benefits." *Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989). Here, as noted previously, the ALJ found that Plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2015." (Tr. 17.) Therefore, to the extent that the Plaintiff's motion is predicated on his belief that his CKD (or any other impairment) has worsened in recent months or years, the ALJ correctly explained at the Plaintiff's hearing that he would "have to find you're disabled prior to December 31st of 2015" to grant the Plaintiff's application. (Tr. 41.) Given that Plaintiff's most aggressive symptoms of CKD appear to have manifested after his date last insured—most notably during the 2016 and 2017 hospital admissions described above—the ALJ was precluded from finding the Plaintiff disabled based on these occurrences and developments. *See, e.g.*, *Mauro v. Berryhill*, 270 F. Supp. 3d 754, 762 (S.D.N.Y. 2017), *aff'd sub nom. Mauro v. Comm'r of Soc. Sec. Admin.*, 746 Fed. App'x 83 (2d Cir. 2019) ("[W]hen a claimant does not show that a currently existing condition rendered her disabled prior to her date last insured, benefits must be denied."). Plaintiff's 2016 and 2017 records concerning his CKD therefore cannot provide a basis for overturning the ALJ's formulation of the Plaintiff's RFC. Nonetheless, to the extent that the ALJ addressed these records and found them insufficient to support the Plaintiff's asserted limitations, the Court finds that the ALJ's assessment of Plaintiff's

chronic kidney disease as it bore on the Plaintiff's RFC, if at all, is supported by substantial evidence in the record.[3]

In sum, Plaintiff's treatment records from 2016 and 2017 provide no basis upon which to conclude that between the alleged onset date of October 31, 2012 and the date last insured of December 31, 2015, Plaintiff's kidney function was impaired to the point of impacting his exertional capacities. To the extent that the ALJ nonetheless considered Plaintiff's chronic kidney disease in formulating the Plaintiff's RFC, the ALJ's determinations are supported by substantial evidence.

**Conclusion**

For the foregoing reasons, the Plaintiff's motion to reverse and/or remand the decision of the Commissioner is denied and the Defendant's motion to affirm the decision of the Commissioner is granted.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of March 2020.

 /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[3] For example, the records from the Plaintiff's follow-up visits with Dr. Carley following the first of his two relevant hospital admissions confirm the ALJ's determination that Plaintiff's CKD remained generally under control during this time period. (*See* Tr. 416, 418, 468, 470.) As the ALJ noted, one of the most recent treatment notes from Dr. Carley dated May 17, 2017 indicates that the Plaintiff's "acute renal failure has resolved[,]" and "[h]is creatinine is now in the normal range." (Tr. 465.) While the record does not include ample follow-up records subsequent to the Plaintiff's August 2017 hospital admission, the ALJ correctly noted that the discharge notes from that admission similarly reflect overall stabilization and predict that Plaintiff would not require long-term hemodialysis. (Tr. 687, 690.) As for Plaintiff's functional limitations generally, the ALJ's observation of the Plaintiff as alert, well-oriented, and displaying a healthy affect, including during his hospital admissions, is likewise supported by substantial evidence in the record. (*E.g.*, Tr. 417, 460, 576, 588, 662, 674, 681.) While there is evidence that Plaintiff suffered from coronary artery disease with symptoms that occasionally included elevated blood pressure and shortness of breath (*e.g.*, Tr. 436–38, 504, 541), other records indicate the absence or resolution of such symptoms (*e.g.*, Tr. 419, 464–65, 505) and Dr. Michael Teiger, a pulmonologist who evaluated the Plaintiff, even commented that Plaintiff's "exercise tolerance is reasonably good and [he] is able to walk without any difficulty" despite the fact that "he does feel his breathing from time to time especially when the weather is hot." (Tr. 459.) These records, moreover, likewise postdate the December 31, 2015 date last insured. In any event, the RFC recognizes appropriate limitations in this area as it provides that Plaintiff "can have only occasional exposure to odors, dusts, fumes, and other pulmonary irritants." (Tr. 20.)